UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SANTOS NOE VIJIL ACOSTA,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-00530-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Santos Noe Vijil Acosta's ("Petitioner")
Motion for Temporary Restraining Order ("TRO").  (ECF No. 1.)  Respondents filed an
opposition.  (ECF No. 16.)  Petitioner filed a reply.  (ECF No. 21.)  For the reasons set forth
below, Petitioner's Motion for TRO is GRANTED and Respondents are ORDERED TO SHOW
CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor
of Petitioner.

**I.    FACTUAL BACKGROUND**

Petitioner is a native and citizen of Honduras.  (ECF No. 16-1 at 9.)  He, along with this
wife and then 14-year-old son, fled Honduras in 2018 after experiencing violence and serious
threats.  (ECF No. 1 at 7.)  They applied for admission into the United States at the San Ysidro
Port of Entry on or about January 3, 2019.  (ECF No. 16-1 at 6.)  Petitioner was issued a Notice to
Appear and released on parole into the United States with monitoring requirements on January 5,

1

2019.  (*Id.* at 9–11; ECF No. 1 at 11.)

After his release in 2019, Petitioner complied with his reporting requirements, obtained work authorization, maintained steady employment, and paid taxes.  (ECF No. 1 at 7, 14.)  He also provided support and care for his elderly parents, who are legal permanent residents.  (*Id.* at 7–8, 18, 20.)  Petitioner has no criminal record.  (*Id.* at 7.)

On February 28, 2020, an immigration judge ordered Petitioner removed to Honduras but granted withholding of removal.  (ECF No. 16-4.)  Although a final order of removal was issued in conjunction with the immigration judge's grant of withholding of removal, Petitioner and his family were never formally placed on an Order of Supervision.  (ECF No. 21 at 4.)  Instead, they continued with the same periodic check-ins they were required prior to the grant of withholding of removal.  (*Id.*)

On December 8, 2025, Petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") for a routine check-in when he was taken into custody.  (*Id.* at 2.)  Petitioner's wife and son were also taken into custody at the same check-in.[1]  (*Id.*)  That same day, Petitioner was served a Notice of Removal stating that ICE "intends to remove you to Mexico."  (ECF No. 16-2 at 2.)  The U.S. Department of Homeland Security ("DHS") later issued a Third Country Screening Notice stating that on December 19, 2025, an asylum officer determined Petitioner "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico."  (*Id.* at 1.)

On January 22, 2026, Petitioner filed a petition for writ of habeas corpus and motion for TRO.  (ECF No. 1.)  Petitioner challenges his detention as violating his due process rights and seeks immediate release.  (*Id.* at 4–5.)  Petitioner's habeas petition and motion were filed by and

---

[1]   Petitioner and his son were taken to Golden State Annex, and his wife was taken to California City.  *See* Habeas Petition, *Diego Noe Vijil Falla v. Warden*, No. 1:26-cv-00526-JLT-EPG (E.D. Cal. Jan. 21, 2026) Dkt. No. 1; Habeas Petition, *Claudia Yaquelin Falla Portillo v. Facility Director*, No. 1:26-cv-00663-DAD-EFB (E.D. Cal. Jan. 27, 2026) Dkt. No. 1.  On February 3, 2026, Petitioner's wife was granted a temporary restraining order and ordered to be immediately released.  *Falla Portillo v. Facility Director*, No. 1:26-CV-00663-DAD-EFB, 2026 WL 279895, at *2 (E.D. Cal. Feb. 3, 2026).  Petitioner's son's request for emergency injunctive relief remains pending.

through his next friend, his brother-in-law, an active-duty member of the United States Army who was granted emergency leave due to the detention of his immediate family members by immigration authorities. (*Id.* at 9–10, 15–16.)

## II.   STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III.   ANALYSIS

The Court considers each of the *Winter* elements in turn.

### A.   Likelihood of Success on the Merits

Petitioner argues that his detention without a bond hearing violates his due process rights. (ECF No. 1 at 4.) In opposition, Respondents claim Petitioner was detained under 8 U.S.C. § 1231(a)(6), which authorizes ICE to detain non-citizens with final orders of removal to effectuate deportation. (ECF No. 16 at 2–4, 6.) Respondents argue Petitioner's two months in detention is presumptively reasonable, he has been afforded more process than what he is due, and even if he is wrongly detained, the appropriate remedy is not release. (*Id.* at 5–6.) On reply, Petitioner points out that the § 1231(a) mandatory custody period expired more than five years ago after the immigration judge's removal order became final, and his removal is not reasonably foreseeable. (ECF No. 21 at 4–5.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released on parole in 2019. (ECF No. 1 at 11.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner maintains, and Respondents do

not contest, that he complied with the terms of his release.  (*Id.* at 3; *see generally* ECF No. 16.)

Indeed, Respondents claim Petitioner was detained due to his final order of removal, not for

violating the conditions of his release.  (ECF No. 16 at 3.)  Over the nearly seven years Petitioner

spent on conditional release, he developed "enduring attachments of normal life" as described in

*Morrissey*, 408 U.S. at 482.  Petitioner obtained work authorization, maintained steady

employment, and developed strong ties to his community.  (ECF No. 1 at 7.)  He has no criminal

history.  (*Id.*)  Petitioner paid his taxes, and he and his family lived in the same apartment

complex since 2020.  (*Id.* at 14, 24.)  For these reasons, the Court finds Petitioner has a

substantial interest in his continued freedom protected by the Fifth Amendment.  *See Doe v.*

*Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in

allowing petitioner to remain in the community for over five years strengthened petitioner's

liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6

(N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration

proceedings has a protected liberty interest in remaining out of custody.").

The fact that Petitioner has a final order of removal does not alter this Court's analysis.

First and foremost, "the government's discretion to incarcerate non-citizens is always constrained

by the requirements of due process." *Hernandez*, 872 F.3d at 981.  Thus, even if ICE had

discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that

discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-CV-01006 JLT

SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke

bond or parole "does not mean that DHS may exercise its discretion in a manner that is

inconsistent with constitutional requirements.").

Further, Respondents are incorrect to rely on 8 U.S.C. § 1231(a)(6) as the basis for

Petitioner's re-detention.  Respondents claim § 1231(a)(6) permits ICE to arrest and re-detain

released noncitizens without notice or process at any time after an order of removal has been final

for more than 90 days.  (ECF No. 16 at 4.)  But § 1231(a)(6) "isn't a free-roaming right to arrest

and detain people any time [ICE] sees fit[.]" *Diallo v. Joyce*, No. 25-CV-9909 (AS), 2025 WL

3718477, at *2 (S.D.N.Y. Dec. 23, 2025).  Rather, § 1231(a)(6) allows for the *continued*

detention, not re-detention, of certain noncitizens after the 90-day removal period. *Id.* (citing *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, [noncitizens] must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' *continue* to detain a[ ] [noncitizen] who still remains here or release that [noncitizen] under supervision. § 1231(a)(6).") (emphasis added)). That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, wider statutory scheme, and relevant regulations. *Id.* (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the Government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention"). Instead, because Petitioner's final order of removal "became final long ago," the 90-day removal period has expired and he is subject to supervision under § 1231(a)(3), not detention. *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."); *see also Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)).

The Court therefore rejects Respondents' argument that Petitioner can be re-detained under § 1231(a)(6) more than five years after his removal period concluded. Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

6

procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention.  Petitioner was released from immigration custody nearly 7 years ago, has work authorization, maintained steady employment, developed strong ties to his community, and supports his elderly parents.  (ECF No. 1 at 7–8.)  Despite this, Petitioner has now been detained for over two months without prior notice or an opportunity to respond to the reasons for revocation of his release.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").  Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13.  *Diaz*, 2025 WL 2581575, at *4.  These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).  Neither process was followed here.  *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).  As Petitioner was

7

denied procedural safeguards to ensure his re-detention was justified, there is a serious risk of his liberty being erroneously deprived.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without procedural safeguards is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Respondents have put forth no compelling interest to support arresting and re-detaining Petitioner without notice or a hearing. There is no indication on the record that circumstances have changed such that Petitioner's removal to Honduras is imminent.[2] Further, the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."). Therefore, the Court can find no legitimate interest for Respondents to continue detaining Petitioner.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and a hearing to determine whether re-detention was warranted. Respondents did not provide either. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the

---

[2] Though Petitioner's habeas petition challenges only his re-detention and not the Government's efforts to deport him to Mexico, the Court notes that numerous courts, including in this Circuit, have held that held that ICE's third-country removal policy is unconstitutional and this Court agrees with those well-reasoned decisions. *See, e.g.*, *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18–23 (W.D. Wash. Aug. 21, 2025); *Zakzouk v. Becerra*, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).

collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. (ECF No. 1 at 15–23.) Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.")

///

**IV.    CONCLUSION**

IT IS HEREBY ORDERED:

1.  Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 1).

2.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

3.  Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody.

4.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5.  Respondents are ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.  Petitioner's newly appointed counsel may supplement or amend Petitioner's habeas petition by **February 12, 2026**.  Respondents shall file responsive papers by **Friday, February 18, 2026**. Petitioner may file a reply by **Wednesday, February 23, 2026**.  The parties shall indicate in their briefing whether they request a hearing.

6.  The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: February 7, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10